UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER PERMITTING FAVARIZ BUSINESS LIMITED TO TAKE DISCOVERY FROM BNY MELLON FOR USE IN FOREIGN PROCEEDINGS.

25 Misc. _____ (___)

**MEMORANDUM OF LAW IN SUPPORT OF
APPLICATION OF PETITIONER FAVARIZ BUSINESS LIMITED
PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER
PERMITTING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

FREEHILL HOGAN & MAHAR LLP
Michael J. Dehart
Madeline S. Ritter
80 Pine St., 25th Fl.
New York, NY 10005
Tel.: (212) 425-1900
Fax: (212) 425-1901
*Counsel for Petitioner*

625663.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

    A.  FBL ............................................................................................................................ 2

    B.  The Hamer Award ..................................................................................................... 2

    C.  Previous Proceedings Related to the Hamer Award in this Court ...................... 2

    D.  The Stay and Settlement Deed ................................................................................ 4

    E.  Talco and TML's Breach of the Deed ..................................................................... 5

    F.  Proceedings in Singapore ........................................................................................ 5

    G.  Talco's Stay Application ........................................................................................... 6

    H.  Talco's Setting Aside Application .......................................................................... 10

    I.  The Discovery Sought in this Application ............................................................ 11

ARGUMENT ....................................................................................................................... 13

    I.  This application satisfies the requirements of 28 U.S.C. § 1782 ...................... 13

    II.  The court should grant this application because doing so would promote the policy
       underlying Section 1782 ......................................................................................... 15

    III.  Discretionary factors weigh in favor of granting this application ..................... 15

CONCLUSION .................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012) .................... 16

*Eurochem Grp. AG v. JPMorgan Chase Bank, N.A.*, 2024 U.S. Dist. LEXIS 152687, at *4-5 (S.D.N.Y. Aug. 26, 2024) ........................................................................................................ 15

*Ex Parte Application of Hamer Investing Ltd. and Alumina & Bauxite Company Ltd. for an Order to Obtain Discovery for Use in a Foreign Proceeding*, 1:14-mc-00026-P1 (S.D.N.Y. 2014) (J. Koeltl) ..................................................................................................................................... 3

*In re Application of Evenstar Master Fund SPC*, 2021 U.S. Dist. LEXIS 162773, at *36 (S.D.N.Y. Aug. 27, 2021) ..................................................................................................... 18

*In re Batbold*, 2021 U.S. Dist. LEXIS 195475, at *4 (S.D.N.Y. Oct. 6, 2021) ........................... 13

*In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996) ........................................................................... 14

*In re Ex Parte Application Pursuant to 28 U.S.C. § 1782 for an Order to Take Discovery of Habib for Use in a Foreign Proceeding*, 2022 U.S. Dist. LEXIS 72545, at *2 (S.D.N.Y. Apr. 20, 2022)........................................................................................................................ 13, 14, 16

*In re Gemeinshcaftspraxis*, No. M19-88, 2006 U.S. Dist. LEXIS 94161, at *26-27 (S.D.N.Y. Dec. 29, 2006) ................................................................................................................... 18

*In re Servicio Pan Americano De Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004)......... 13

*In re Vale S.A.*, 2020 U.S. Dist. LEXIS 127433, at *10-11 (S.D.N.Y. July 20, 2020)................. 17

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)); *see also Certain Funds, Accounts And/Or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015) .................................................................... 14, 15, 16

*Metallgesellschaft AG v. Hodapp*, 121 F.3d 77, 78 (2d Cir. 1997) ............................................ 15

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-CV-269, 2008 U.S. Dist. LEXIS 63802, at *26-27 (N.D.N.Y. Aug. 18, 2008)........................................................................................................ 17

*Sampedro v. Silver Point Capital, L.P.*, 958 F.3d 140, 143 (2d Cir. 2020)................................. 15

## Statutes

28 U.S.C. § 1782(a). ................................................................................................................ 13

## Other Authorities

Bob Rehorst and Wouter Kuikl, *Tajikistan's Catch-22: Foreign Investment and Sovereignty Risks*,

The Diplomat, Mar. 24, 2021, https://thediplomat.com/2021/03/tajikistans-catch-22-foreign-

investment-and-sovereignty-risks/ ....................................................................................... 3


S. Rep. No. 1580, 88th Cong., 2d Sess., at 8 (1964)..................................................................... 14

## PRELIMINARY STATEMENT

Petitioner Favariz Business Limited ("FBL" or the "Petitioner"), by its attorneys Freehill Hogan & Mahar LLP, respectfully submits this Memorandum of Law pursuant to 28 U.S.C. § 1782 for an order authorizing it to serve subpoenas for the production of documents by the Bank of New York Mellon Corp. ("BNY Mellon" or the "Bank") for use in an ongoing civil proceeding in Singapore, as well as for use in contemplated proceedings in other foreign tribunals. This application seeks the production of documents regarding U.S. Dollar transactions involving the following companies: OJSC Tajik Aluminum Company (Republic of Tajikistan, "Talco"), Talco Management Limited (British Virgin Islands, "TML"), Talco Management DMCC (United Arab Emirates, "TML UAE"), CJSC Talco Gold (Republic of Tajikistan), LLC Talko Resurs (Republic of Tajikistan), LLC Talco Chemical (Republic of Tajikistan), LLC Talco Fluorit (Republic of Tajikistan), OJSC Alyuminsoktmon (Republic of Tajikistan), LLC Nuron (Republic of Tajikistan), OJSC Takob (Republic of Tajikistan), LLC Nokili Talco (Republic of Tajikistan), LLC Specialnaya Tekhnologicheskaya Kompaniya Talco-Krantas (Republic of Tajikistan), LLC Talco Uzavto Trek Sovmestnoe Predpriyatie (Republic of Tajikistan), OJSC Talco Indastriz (Republic of Tajikistan), LLC Talco Profil (Republic of Tajikistan), OJSC Alyuminsohtmon (Republic of Tajikistan), OJSC Production and Trading Company Metallurg (Republic of Tajikistan), OJSC Hizmatrasonii sajyohi (Republic of Tajikistan), OJSC Nasli navras (Republic of Tajikistan), OJSC Markazi taminoti garmirasoni (Republic of Tajikistan) and OJSC Rogunskaya HES (Republic of Tajikistan) (collectively referred to herein as "the TALCO Group").

Such discovery is necessary in order to find assets of Talco and TALCO Group, with the former failing to voluntarily pay an arbitral award in favor of FBL in the amount of

625663.1

$315,913,988.82 (as of December 18, 2023), which is the subject of pending civil proceedings filed by FBL in the Singapore courts for its enforcement, as well contemplated enforcement proceedings in other jurisdictions.

## FACTUAL BACKGROUND

### A.    FBL

FBL is a company incorporated in the British Virgin Islands with its registered office located at Intershore Chambers, P.O. Box 4342, Road Town, Tortola, British Virgin Islands. Declaration of Timur Valiev ("Valiev Decl."), ¶ 4. It is an assignee for value of the Hamer Award.

### B.    The Hamer Award

On October 9, 2013, an arbitral tribunal seated in Switzerland (Zurich Chamber of Commerce Case No. 600097-2007) rendered a final award related to a dispute between a company called Hamer Investing Limited ("Hamer") and Talco, and ordered Talco to pay Hamer damages in the amount of US $112,745,501, costs, fees and expenses of the arbitration proceedings, including attorneys' fees in the amount of US $14,579,385, and interest at the rate of 5% per annum simple interest on any awarded amounts outstanding starting sixty (60) days following the date of award until it is paid in full ("Hamer Award"). Valiev Decl., ¶ 5, Ex. 1. The current value of the Hamer Award is approximately US $316 million, all of which remains outstanding and owed by Talco. Valiev Decl., ¶ 6.

### C.    Previous Proceedings Related to the Hamer Award in this Court

This is not the first time, not the second, but the third time the enforcement of the Hamer Award required the assistance of this Court. In 2014, Hamer (among others) filed applications in this District for §1782 discovery for use in foreign proceedings (in that case, in the British Virgin Islands), which request was granted by this Court in an action titled *Ex Parte Application of Hamer Investing Ltd. and Alumina & Bauxite Company Ltd. for an Order to Obtain Discovery for Use in*

2

*a Foreign Proceeding*, 1:14-mc-00026-P1 (S.D.N.Y. 2014) (J. Koeltl) ("First Sec. 1782 Proceedings"). Valiev Decl., ¶ 7.

As part of its submissions in the First Sec. 1782 Proceedings, Hamer (represented by Sidley Austin LLP) explained that "Talco is a state-owned aluminum smelter and the largest economic enterprise in Tajikistan" that is controlled by the country's corrupt ruling elite. *See* Declaration of Michael J. Dehart ("Dehart Aff.")., Ex. 2 at 1. The problem, as noted by Hamer, was that Talco was stripped of profits, which are diverted to shell companies controlled by associates of the country's corrupt ruling elite. Hamer further explained that: "As *The Economist* noted in July 2013: 'Each year TALCO produced hundreds of millions of dollars in profits that are routed to a shell company in the British Virgin Islands.' The U.S. Embassy in Dushanbe, Tajikistan, corroborates this view, paraphrasing an *Asia Times* article as follows:

> [C]ash from [Talco's] major tolling arrangements flows through an intermediary company called TALCO Management Ltd (TML), registered in the British Virgin Islands. The Tajik government owns 70% of the TML and the rest is owned by wealthy Tajik individuals[].The difference between TALCO's smelter receipts and the declared value of the exported aluminum, which runs in the hundreds of millions of dollars, may provide some indication of the amount of money going through TML."

*Id*. at 2.

As reported in the press, little has changed. Talco is still being used as a cash-generation machine for the chosen few, who accumulate wealth in offshore jurisdictions, while the Tajik people and Tajikistan remain the poorest country in Central Asia.[1]

The second application seeking disclosure of banking transactions was filed on behalf of Petitioner in November 2024 for use in an ongoing proceeding in Singapore, as further detailed

---

[1] *See* Bob Rehorst and Wouter Kuikl, *Tajikistan's Catch-22: Foreign Investment and Sovereignty Risks*, The Diplomat, Mar. 24, 2021, https://thediplomat.com/2021/03/tajikistans-catch-22-foreign-investment-and-sovereignty-risks/

below. In December 2024, Judge Kaplan of this Court granted a substantially similar petition pursuant to 28 U.S.C. § 1782. Dehart Aff., ¶ 5, Ex. 3.

**D.    The Stay and Settlement Deed**

Following the issuance of the Hamer Award, Hamer tried to collect on the award, including by using the materials obtained in First Sec. 1782 Proceedings. After years of negotiations with participation of the Tajik Government in order to settle all claims against Talco and the TALCO Group, the parties reached a settlement agreement. Valiev Decl., ¶ 8.

On March 21, 2017, Hamer and FBL entered into a Deed of Assignment of Arbitration Award ("Deed of Assignment"), whereby Hamer assigned to FBL its claims against Talco under the Hamer Award for valid consideration. Valiev Decl., ¶ 9, Ex. 2. Subsequently, on March 23, 2017, FBL, as the claimholder of the Hamer Award, Talco, its affiliate Talco Management Limited ("TML"), and with Redao Holdings S.A. ("Redao") as the owner of Sunlink Limited, entered into an agreement called Stay and Settlement Deed Relating to Sozidanie and Sale of Sunlink Shares and the Hamer Award (the "Deed"). Valiev Decl., ¶ 10, Ex. 3.

Under the Deed, TML agreed to purchase from Redao shares of Sunlink Limited, a Cyprus company that through Tajik company OOO Sozidanie, owned a five-star hotel (Hyatt Regency Dushanbe) and the business center "Sozidanie" in Dushanbe, Tajikistan for US $150,000,000 ("Total Purchase Price"). Valiev Decl., ¶ 11. The Total Purchase Price was to be paid by Talco and TML in installments on the basis of joint and several liability over a 10-year-period, concluding in March 2027. *Id*. As part of the Deed, the parties agreed to terminate all present, future, contemplated and contingent proceedings in relation to the Redao's real estate holdings, while FBL agreed to stay any proceedings in connection with the Hamer Award

provided that Talco and TML did not breach their payment obligations under the Deed. Valiev Decl., ¶ 12.

### E.    Talco and TML's Breach of the Deed

On July 25, 2023, FBL received a Notice of Default issued by Redao against Talco and TML. Valiev Decl., ¶ 13, Ex. 4. In the Notice of Default, Redao declared an Event of Default pursuant to Clause 3.9 of the Deed, and asserted its right to claim from Talco and TML the unpaid amount of the Total Purchase Price in accordance with Clause 3.11 of the Deed. Talco and TML had not paid Redao under the Deed since May 2020, leaving a debt to Redao of US $124,813,627.91 at that time. *Id*. Talco and TML failed to pay the Total Purchase Price in accordance with the schedule set out in the Deed, which was grounds for the Notice of Default, which automatically lifted the stay on enforcement of the Hamer Award. Valiev Decl., ¶ 14.

### F.    Proceedings in Singapore

After the receipt of the Notice of Default, and TML and Talco's failure to fulfill their obligations to pay the Total Purchase Price under the Deed, FBL was entitled to enforce Hamer Award in any jurisdiction it considered appropriate. Valiev Decl., ¶ 15.

On December 21, 2023, FBL applied to the General Division of the High Court of the Republic of Singapore under Section 29 of the International Arbitration Act 1994 and Order 48, Rule 6 of the Rules of Court 2021 ("Application"). By this Application, FBL sought to enforce Hamer Award on the territory of the Republic of Singapore, utilizing its courts. Valiev Decl., ¶ 16.

On December 22, 2023, the Learned Deputy Registrar in HC/ORC 45/2024 allowed an Application (1) granting FBL leave to enforce Hamer Award against Talco in the same manner as a Judgment or Order of the General Division of the High Court of the Republic of Singapore

to the same effect; and (2) fixing the costs of and incidental to Application and the Judgment or Order to be entered thereunder at US $2,500 (all-in) to be paid by Talco to FBL ("Leave Order"). Valiev Decl., ¶ 17.

Having been granted Leave Order, on February 14, 2024, FBL served it on Talco at its registered place of business in Tursunzade, Tajikistan. Valiev Decl., ¶ 18. On April 24, 2024, Talco filed the Stay Application and the Setting Aside Application ("Applications"). The matter was subsequently transferred to the Singapore International Commercial Court ("SICC"), which is a division of the General Division of the Singapore High Court and part of the Supreme Court of Singapore designed to deal with transnational commercial disputes. Valiev Decl., ¶ 20, Ex. 5.

## G.    Talco's Stay Application

Talco's Stay Application is predicated on the assertion that FBL's entitlement to commence and/or continue enforcement proceedings is a matter squarely within the ambit of a valid arbitration agreement between the parties. Specifically, Talco contends that, pursuant to the Deed—which is governed by English law and provides for all disputes to be referred to arbitration in Stockholm—FBL must initiate new arbitration proceedings. Valiev Decl., ¶ 21. The purpose of such proceedings would be for an arbitral tribunal to issue a *new* arbitral award confirming FBL's right to proceed with enforcement of the original Hamer Award (which was itself the product of an arbitration). According to Talco, FBL would only be entitled to lift the stay and commence enforcement proceedings after such a declaration. Further, Talco maintains that it is not in breach of the Deed, asserting that continued payments to Redao would contravene U.S. sanctions, rendering performance under the Deed legally impossible. Valiev Decl., ¶ 22.

FBL has contested both the Stay Application and Talco's interpretation of the Deed in the Singapore courts. FBL asserts that it is not required to obtain a new arbitral award to enforce

the existing Hamer Award. Further, FBL completely disagrees with Talco's position, viewing it as unfounded and a dilatory tactic intended to delay enforcement and evade its obligations under Hamer Award. Valiev Decl., ¶ 24. The Hamer Award is valid and enforceable, and there are no conditions precedent or legal impediments preventing its enforcement in a court.

FBL has also maintained that no U.S. sanctions are applicable to Redao. Therefore, Talco's argument regarding legal impossibility is unfounded. Valiev Decl., ¶ 24. This is consistent with the parties' course of dealing, as FBL has evidence that TML successfully made several payments to Redao after it had asserted legal impossibility due to sanctions. Valiev Decl., ¶ 23. This conduct demonstrates that Talco and TML did not consider performance under the Deed to be legally impossible in practice, but merely convenient for the purpose of the instant application.

In support of its position, FBL has petitioned the SICC to submit expert opinions on, among other topics, English law, which demonstrates that under English law there is no requirement for FBL to initiate new arbitration proceedings to enforce the existing Hamer Award, since the Deed does not impose any conditions precedent that prevent enforcement at this stage. Valiev Decl., ¶ 27.

On August 2, 2024, the SICC authorized the submission of expert evidence on English law by the parties and circumscribed its scope to specific matters. Both parties submitted their respective English law expert opinions to the court. Valiev Decl., ¶ 27.

On February 4, 2025, Talco informed the SICC that Redao, another creditor of Talco and TML under the Deed, had commenced arbitration proceedings in January 2025 under the Rules for Expedited Arbitrations of the Arbitration Institute of the Stockholm Chamber of Commerce

("SCC"). Redao seeks recovery of a debt related to the sale of shares in Sunlink Limited to TML based, *inter alia*, on the issue of whether Talco and TML breached the Deed. Valiev Decl., ¶ 28.

During a hearing on February 5, 2025, Talco argued that if the SICC were to grant a stay of enforcement proceedings in Singapore, it should do so without conditions, as all issues regarding breaches of the Deed would be resolved in the SCC arbitration. Valiev Decl., ¶ 29. Talco's counsel also expounded that Talco was ready to initiate its own arbitration proceedings against FBL immediately in order to determine whether its obligation to pay the Hamer Award has arisen as a result of a breach of the Deed. Valiev Decl., ¶ 30. However, Talco's submissions revealed its inconsistency, as it (i) has not participated in the SCC arbitration to date, and (ii) did not confirm, in response to a direct question from the Judge, that it would comply with any resulting arbitral award. Valiev Decl., ¶ 31.

At the conclusion of the hearing, the Judge indicated it would be preferable for the parties to proceed based on his preliminary view that a stay should be granted. Valiev Decl., ¶ 32.

On February 19, 2025, the SICC ordered a stay of all further proceedings, expressly conditioned upon Talco initiating arbitration proceedings before the SCC seeking an order declaring that, given the current circumstances, the Petitioner is not entitled to enforce the arbitration award underlying these proceedings within 10 days (by March 3, 2025) as required by Clause 6.2 of the Deed. Talco was further required to diligently prosecute the arbitration and comply with all directions of the arbitrator or of the SCC Board. Valiev Decl., ¶ 33.

Talco has failed to initiate arbitration before the SCC within 10 days as ordered by the Judge and on March 6, 2025 filed an application with the SICC seeking a variation of the order to extend the arbitration initiation deadline to April 24, 2025 ("Application for Extension"). Talco

justified its request by citing the need to retain legal counsel, obtain approval from its Board of Directors for such counsel, review documents, and issue formal instructions. Valiev Decl., ¶ 34.

FBL opposed the Application for Extension, highlighting Talco's ongoing inconsistencies and apparent bad-faith actions aimed at delaying payment obligations. Specifically, FBL emphasized that the parties have been litigating in Singapore courts since late 2023, and the necessity to resolve breaches through arbitration was Talco's own asserted position for over six months. FBL further noted Talco's admission to the court that it had been aware of the existing arbitration since January 2025, providing ample time to retain counsel and initiate arbitration. Valiev Decl., ¶ 35.

On the following day, on March 7, 2025, FBL applied to the SICC seeking a lifting of the stay on the grounds of Talco's non-compliance with the Order of February 19, 2025. Talco opposed the lift by referencing to arguments set forth in its earlier Application for Extension. Valiev Decl., ¶ 35.

Further, on March 7, 2025, the SICC directed parties to submit written submissions regarding Talco's Application to extend by March 21, 2025. In accordance with the SICC's instructions, the parties provided their respective written submissions. FBL asserted that the stay ought to be lifted, since it automatically lapsed on March 4, 2025. In the alternative, FBL contended that any further extension should be conditional upon Talco furnishing security in the amount of US $15 million. Such a requirement, FBL argued, was warranted given Talco's repeated recourse to dilatory tactics aimed to hinder the enforcement process. Conversely, Talco maintained that an extension was justified on the abovementioned basis with respect to the need to retain legal counsel, review documents, and issue formal instructions. Talco viewed such an

extension as "*reasonable and justified in all the circumstances of the case*", and argued that it ought to be granted without further conditions. Valiev Decl., ¶ 37.

On April 1, 2025, the SICC granted an extension to commence arbitration proceedings until April 12, 2025. As of April 15, 2025, Talco had failed to initiate such proceedings, in contravention of the express directions of the SICC's orders of February 19 and April 1, 2025. Therefore, on April 21, 2025, FBL submitted a request to the SICC to lift the stay, notifying Talco of such an intent, as required, two days in advance. In absence of a response from Talco, the SICC granted it to submit comments until April 24, 2025. To date, Talco has not made a submission in Singapore as ordered. Valiev Decl., ¶ 38.

## H.    Talco's Setting Aside Application

In its Setting Aside Application Talco further asserts that the enforcement of Hamer Award would be contrary to the public policy of Singapore in at least two respects:

*(1) Upholding Arbitration Agreements:* Talco contends that enforcement would contravene Singapore's public policy of upholding and enforcing arbitration agreements. Talco argues that the Leave Order was granted in circumstances where the FBL had not fully and frankly disclosed the condition precedent in Clause 4.1(c) of the Deed to the Honourable Court.

*(2) Observing International Comity:* Talco asserts that enforcement would violate Singapore's public policy of observing and respecting international comity. Talco claims that enforcing Hamer Award against Talco would effectively compel it to breach U.S. sanctions (including secondary sanctions) imposed by OFAC on certain individuals and their companies, which—as Talco has sought to demonstrate—include FBL.

Valiev Decl., ¶ 25.

10

FBL refutes these assertions, maintaining that:

*(1)*    *Full Disclosure:* All necessary disclosures, including Clause 4.1(c) of the Deed, have been made transparently to the court by FBL. There has been no failure of full and frank disclosure that would warrant setting aside the Leave Order.

*(2)*    *No Applicable U.S. Sanctions:* Enforcing the Award does not compel Talco to breach any U.S. sanctions, as no such sanctions are applicable to FBL or Redao.

*(3)*    *Debtor's Conduct:* Talco and TML's own actions—specifically, making several payments to Redao by TML in accordance with the Deed after claiming legal impossibility—demonstrate that it does not genuinely believe performance is impossible.

*(4)*    *No Need for New Arbitration:* FBL is not required to obtain a new arbitral award to enforce the existing Hamer Award. Talco's contention that a new arbitration is necessary is unfounded and contradicts established principles of arbitration and enforcement under the New York Convention.

*(5)*    *Public Policy Alignment:* Enforcement aligns with Singapore's public policy of upholding the finality and enforceability of arbitral awards, in accordance with the New York Convention and Singapore's pro-arbitration stance.

*See* Valiev Decl., ¶¶ 23, 26.

Talco's Setting Aside Application will be considered and determined by the SICC after the Stay of Proceedings imposed by its Order dated February 19, 2025, is lifted.

## I.    The Discovery Sought in this Application

In order to give FBL an opportunity to prove its case, and ascertain Talco's assets, in this application FBL respectfully requests that the Court authorize its attorneys, Freehill Hogan & Mahar LLP, to: (1) serve a subpoena on BNY Mellon requesting documents concerning

11

transaction details regarding any and all payments made or received by each of OJSC Tajik Aluminum Company, Talco Management Limited (British Virgin Islands), Talco Management DMCC (United Arab Emirates), CJSC Talco Gold, LLC Talko Resurs, LLC Talco Chemical, LLC Talco Fluorit, OJSC Alyuminsoktmon, LLC Nuron, OJSC Takob, LLC Nokili Talco, LLC Specialnaya Tekhnologicheskaya Kompaniya Talco-Krantas, LLC Talco Uzavto Trek Sovmestnoe Predpriyatie, OJSC Talco Indastriz, LLC Talco Profil, OJSC Alyuminsohtmon, OJSC Production and Trading Company Metallurg, OJSC Hizmatrasonii sajyohi, OJSC Nasli navras, OJSC Markazi taminoti garmirasoni and OJSC Rogunskaya HES using a correspondent account at BNY Mellon between March 23, 2017 and the present; and (ii) serve additional subpoenas on BNY Mellon for the production of documents and/or depositions as the Petitioner reasonably determines appropriate. On information and belief, TALCO Group's main banking relationship with Orienbank, one of the largest financial institutions in Tajikistan, and other banks in Tajikistan. On further information and belief, Orienbank does not maintain correspondent bank accounts with U.S. institutions directly, and it instead uses intermediary banks, many of which are based in Asia. *Id*. BNY Mellon has a correspondent account for a number of foreign banks with which Talco and TALCO Group utilize through its relationship with Orienbank and other Tajik Banks. Specifically, at least the following banks utilize BNY Mellon for U.S. dollar transactions on behalf of Orienbank and other Tajik banks: Halyk Bank JSC, Commerzbank AG, Raiffeisenbank International AG, Aktif Yatirim Bankasi AS, Eurasian Bank, Altyn Bank. Valiev Decl., ¶ 41.

The discovery related to these accounts will help FBL identify assets that can be used to satisfy the Hamer Award, and evidence of payments that are contrary to Talco's position in its Stay Application and Setting Aside Application. In particular, in the course of the Singapore

Proceedings, FBL needs information on whether and how Talco improperly transferred its funds, which would include banks in the U.S. financial system, and how Talco used affiliated companies to avoid payments under Hamer Award. Valiev Decl., ¶ 42.

## **ARGUMENT**

### **POINT I**
### **THIS APPLICATION SATISFIES THE REQUIREMENTS OF 28 U.S.C. § 1782**

Section 1782 provides, in relevant part:

The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court ....

28 U.S.C. § 1782(a).

In this Circuit, a district court may grant discovery under Section 1782 where (1) the party from whom discovery is sought can be found in the district where the application is made; (2) the discovery will be used in a foreign proceeding; and (3) the party seeking discovery is an "interested person" in the foreign proceeding. *See, e.g., In re Ex Parte Application Pursuant to 28 U.S.C. § 1782 for an Order to Take Discovery of Habib for Use in a Foreign Proceeding*, 2022 U.S. Dist. LEXIS 72545, at *2 (S.D.N.Y. Apr. 20, 2022); *In re Batbold*, 2021 U.S. Dist. LEXIS 195475, at *4 (S.D.N.Y. Oct. 6, 2021). "Section 1782 may be invoked even where foreign legal proceedings are not even underway, provided that a 'dispositive ruling...[is] within reasonable contemplation." *In re Servicio Pan Americano De Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)); *see also Certain Funds, Accounts And/Or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp.*

13

*L.L.C. v. KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015). Here, all three requirements of Section 1782 are satisfied.

First, BNY Mellon maintains a presence in this district, as it has an office with an address at 240 Greenwich Street, New York, New York, 10286. Dehart Aff., ¶ 3.

Second, the discovery that FBL seeks is necessary for use in the Singapore Proceedings in order to discover what assets the TALCO Group has in Singapore and other jurisdictions that may be used by FBL to satisfy the Hamer Award. As previously explained, Talco and TML have a long track record of avoiding its obligations under the Hamer Award and the Deed, among others, which has frustrated the efforts of FBL and other creditors from being made whole. The discovery sought from BNY Mellon will help FBL identify assets held by the Talco, as well as transfers made by Talco using correspondent banks with relationships with Orienbank, and evidence of payments made that contradict Talco's position in the Stay Application that FBL can present in Singapore in support of its efforts to satisfy the Hamer Award. Valiev Decl., ¶ 42. Courts in this district have found that seeking discovery in order to enforce a judgment in an enforcement proceeding satisfies the "for use" requirement. *See In re Ex Parte Application Pursuant to 28 U.S.C. § 1782 for an Order to Take Discovery of Habib for Use in a Foreign Proceeding*, 2022 U.S. Dist. LEXIS 72545, at *6-7 (S.D.N.Y. Apr. 20, 2022).

Third, FBL, as the holder and owner of the Hamer Award, is clearly an "interested party" in the Singapore Proceedings and other contemplated proceedings in other jurisdictions. *See In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (per curiam) (ruling that the applicant was an "interested person" within the meaning of Section 1782 because he was a party to the foreign proceedings) (quoting S. Rep. No. 1580, 88th Cong., 2d Sess., at 8 (1964) (an "interested person" includes one

625663.1

who is a "party to . . . foreign or international litigation")); *see also Eurochem Grp. AG v. JPMorgan Chase Bank, N.A.*, 2024 U.S. Dist. LEXIS 152687, at *4-5 (S.D.N.Y. Aug. 26, 2024)

Because all of Section 1782's requirements are satisfied, the Court should grant this application.

## POINT II
## THE COURT SHOULD GRANT THIS APPLICATION BECAUSE DOING SO WOULD PROMOTE THE POLICY UNDERLYING SECTION 1782

"[D]istrict courts must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts . . ." *Metallgesellschaft AG v. Hodapp*, 121 F.3d 77, 78 (2d Cir. 1997); *see also Sampedro v. Silver Point Capital, L.P.*, 958 F.3d 140, 143 (2d Cir. 2020).

Granting this application would promote the twin goals of Section 1782. As set forth above, the requested discovery is needed to obtain evidence of assets of the TALCO Group that may be used to satisfy the Hamer Award through pending, and contemplated, judicial proceedings and contradict Talco's positions in a pending application. Granting such discovery would also encourage courts in Singapore to render similar assistance to U.S. litigants.

## POINT III
## DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING THIS APPLICATION

Where, as here, the statutory requirements of Section 1782 are satisfied, the court has discretion to order the requested discovery. *See Intel Corp.*, 542 U.S. at 255. In exercising this discretion, a court may consider: (1) whether "the person from whom discovery is sought is a

participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery sought is "unduly intrusive or burdensome." *See id.* at 264-65. When performing this analysis, courts should consider Section 1782's twin aims: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012). Here, the discretionary factors weigh in favor of granting this application.

### A.    **BNY Mellon is Not a Participant in the Foreign Proceedings**

BNY Mellon is not a party to the Singapore Proceedings and other contemplated proceedings. Accordingly, this factor weighs in favor of granting the requested discovery. *See Intel*, 542 U.S. at 264 (stating that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.").

### B.    **Receptivity of the Foreign Tribunal to Discovery Pursuant to Section 1782**

A foreign tribunal's "receptivity," in the context of Section 1782, considers whether there is "authoritative proof" in the form of "judicial, executive or legislative declarations" that "a foreign tribunal would reject evidence obtained with the aid of section 1782." *See In re Ex Parte Application Pursuant to 28 U.S.C. § 1782 for an Order to Take Discovery of Habib for Use in a Foreign Proceeding*, 2022 U.S. Dist. LEXIS 72545, at *8 (S.D.N.Y. Apr. 20, 2022). Here, there is no "authoritative proof" that would indicate that evidence obtained pursuant to this application

would be rejected by the tribunal in the Singapore Proceedings or contemplated proceedings, and therefore this factor also weighs in favor of granting the requested discovery. Of note, a district court may not deny discovery on the ground that the evidence sought is not discoverable or is premature in the foreign proceeding.[2]

### C.      This Application Is Not an Effort to Circumvent Restrictions in Foreign Proof-Gathering

This factor considers whether a Section 1782 application is made in bad faith. *See Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-CV-269, 2008 U.S. Dist. LEXIS 63802, at *26-27 (N.D.N.Y. Aug. 18, 2008) (ruling that this *Intel* factor weighed in favor of granting the Section 1782 application in that case, stating "we find nothing within this record to support that Minatec is seeking this information with less than a good faith belief that § 1782 discovery would be helpful to the foreign tribunals and itself"). Here, FBL has filed this application in good faith, seeking to obtain evidence from entities located in this district that are believed to have evidence needed by FBL for use in the Singapore Proceedings and contemplated proceedings in other jurisdictions. *See In re Vale S.A.*, 2020 U.S. Dist. LEXIS 127433, at *10-11 (S.D.N.Y. July 20, 2020) (holding that although it was not the petitioner's "burden to demonstrate good faith, it has provided submissions sufficient to show relevance to purposes of discovery" and the court was "not concerned that the discovery is being sought in bad faith."). Thus, this factor also favors granting this application.

### D.      The Requested Discovery Is Not "Unduly Intrusive or Burdensome"

This factor considers whether the discovery requests in the application are "sufficiently tailored to the litigation issues for which production is sought." *In re Gemeinshcaftspraxis*, No.

---

[2] *See Metallgesellschaft*, 121 F.3d at 79 (district court abused its discretion in denying discovery on grounds that evidence sought was not discoverable under German law).

M19-88, 2006 U.S. Dist. LEXIS 94161, at *26-27 (S.D.N.Y. Dec. 29, 2006); *In re Application of*

*Evenstar Master Fund SPC*, 2021 U.S. Dist. LEXIS 162773, at *36 (S.D.N.Y. Aug. 27, 2021)

(finding subpoenas were "sufficiently tailored in time and subject matter"). As stated above, the

document requests in the proposed subpoena attached to this application seek documents that are

necessary for use in the Singapore Proceeding and contemplated proceedings in other jurisdictions

in order to discover information about the assets of the TALCO Group that can be used to satisfy

the Hamer Award. As such, this factor also weighs in favor of granting this application.

## **CONCLUSION**

For the foregoing reasons, FBL respectfully requests an Order:

1.      granting its application for discovery pursuant to 28 U.S.C. § 1782;

2.      authorizing it to take discovery from BNY Mellon, including issuing the Subpoena for the

production of documents from BNY Mellon in the form attached to the Dehart Affirmation

as Exhibit 1; and

3.      directing BNY Mellon to comply with such Subpoena.

Dated: New York, NY
         April 30, 2025

FREEHILL, HOGAN & MAHAR LLP
*Attorneys for Petitioner*

/s/ Michael J. Dehart

By:     _____

Michael J. Dehart
Madeline S. Ritter
80 Pine St., 25th Fl.
New York, NY 10005
Tel.: (212) 425-1900
Fax: (212) 425-1901
dehart@freehill.com
ritter@freehill.com

625663.1